## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL MCGINNIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:12-cv-01880-JFC |
| | ) | |
| PATRICK R. DONAHOE, Postmaster | ) | |
| General, United States Postal Service, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## <u>MEMORANDUM OPINION</u>

**CONTI, Chief District Judge.**

## I.  Introduction

This employment discrimination case was brought by Michael McGinnis ("Plaintiff" or "McGinnis") against his employer, Patrick R. Donahoe, Postmaster General, United States Postal Service ("Defendant" or "USPS").  Plaintiff asserts that Defendant discriminated against him based upon his race, color, sex, and age in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq*. ("ADEA").  Plaintiff also claims that he was subject to a hostile work environment and retaliation in violation of Title VII and the ADEA.  (ECF No. 1).

Pending before the court is Defendant's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  (ECF No. 22).  Upon consideration of the parties' submissions and for the reasons set forth below, the Defendant's motion will be granted.

## II.  Factual Background and Procedural History[1]

---

[1]The factual background is derived from the combined statement of material facts (ECF No. 31), undisputed evidence of record and the disputed evidence of record viewed in the light most favorable to the nonmoving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 255 (1986) ("The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.").  The undersigned notes that Plaintiff's inadequate submissions did not advance his contentions before the court.  Rule 56(c)(1)(A) of the Federal Rules of Civil Procedure and Rule 56.C of the Local Rules for the Western District of Pennsylvania require "[a] party asserting that a fact cannot be or is genuinely disputed

Plaintiff is a 54-year-old African-American male employed by the USPS as a supervisor, customer services, at the East Liberty Station in Pittsburgh, Pennsylvania. (ECF No. 31 ¶ 7). Plaintiff has been employed by Defendant since 1986, and has been a supervisor since 1994. (ECF No. 25-6 at 3, McGinnis Dep. at 8). Plaintiff's job responsibilities include supervising mail carriers and having the mail distributed and delivered. (ECF No. 31 ¶ 8). In addition to Plaintiff, there were three other supervisors at the East Liberty Station: Jeanine Adams ("Adams"), an African-American female, whose birthday is July 7, 1965, and was 46-years-old in 2011; Lenore Thomas ("Thomas"), a Caucasian female, whose birthday is January 11, 1967, and was 44-years-old in 2011; and Steve Gestrich ("Gestrich"). (ECF No. 25-6 at 4, McGinnis Dep. at 11), ECF No. 31 ¶¶ 50, 51, 54.) All four supervisors usually reported to Dino Gaetano ("Gaetano"), the manager of the East Liberty Station. (ECF No. 31 ¶ 10).

The events which give rise to Plaintiff's claims occurred in August 2011 when the East Liberty Station was short-staffed due to the vacations of Gaetano and Gestrich. (ECF No. 31 ¶ 16). Adams was the acting manager at the East Liberty Station in Gaetano's absence, and was responsible for supervising Plaintiff, Thomas and Gestrich. (ECF No. 31 ¶¶ 12-13). Adams reported to Russ Graswick ("Graswick"), the acting area manager. (ECF No. 25-6 at 6,

---

must support the assertion by: … citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials; …." Fed.R.Civ.P. 56(c)(1)(A); LCvR 56.C.1. In addition, the court's case management order specifically instructed the parties to comply with Local Rule 56 with respect to the filing of a motion for summary judgment and the filing of the response. (ECF No. 21).

Plaintiff's counter-statement of material facts contains little citation to the summary judgment record, or consists of numerous argumentative statements in lieu of a response to Defendant's stated facts. *See* (ECF No. 26). Plaintiff's submissions are a clear violation of the Federal Rule of Civil Procedure 56(c)(1) and this district's local rules. The undersigned observes that, although not nearly as numerous, some of Defendant's statements also fail to include a citation to the summary judgment record. (ECF No. 24). The court should not be tasked with combing through the record in order to find support for the statements included in the submissions. *Perkins v. City of Elizabeth*, 412 F. App'x 554, 555 (3d Cir. 2011) ("a court is not obliged to scour the record to find evidence that will support a party's claims"). "Judges are not like pigs, hunting for truffles buried in the record." *Doeblers' Pennsylvania Hybrids, Inc. v. Doebler*, 442 F.3d 812, 820 (3d Cir. 2006) (citation omitted).

In addition, Plaintiff's brief in opposition is inadequate. Plaintiff failed to respond to Defendant's brief in support in any fashion, other than to state:

All of the material averments in Defendant's Concise Statement are denied or rebutted by Plaintiff, and all present factual issues which cannot be resolved through summary judgment.

(ECF No. 27). There is no citation or analysis of the case law and there is no application of the facts to the relevant law. Ordinarily, the court would strike Plaintiff's submissions and order him to respond in accordance with the rules and this court's case management order. Because the court independently reviewed the entire summary judgment record and concluded that the Plaintiff's claims are devoid of merit, no further submissions will be ordered in this matter. Plaintiff's counsel is cautioned, however, that any future submissions must comply with the Federal Rules of Civil Procedure, the local rules and this court's orders.

McGinnis Dep. at 20). Gestrich, who was also on vacation, was a "closing supervisor," and responsible for completing and electronically submitting the "PM Checklist," a document utilized to ensure that all the mail had been delivered and the building was secured. (ECF No. 25-10 at 11). Plaintiff's normal work hours were 6:30 a.m. to 3:30 p.m. (ECF No. 31 ¶ 15). In Gestrich's absence, however, Plaintiff worked extra hours and was responsible for submitting the PM Checklist. (ECF No. 25-6 at 6, McGinnis Dep. at 19). It is undisputed that Plaintiff did not submit the PM Checklist on August 3, 2011. (ECF No. 25-10 at 12).

On August 4, 2011, Graswick instructed Adams to have Plaintiff send him an email explaining why the PM Checklist had not been submitted. (ECF No. 25-10 at 12-13). When instructed by Adams to do so, Plaintiff explained that he was leaving for a physical therapy appointment and would email Graswick upon his return. (ECF No. 25-6 at 5-6, McGinnis Dep. at 16-17).[2] When Plaintiff was told by Adams to email Graswick before he left, Plaintiff sent Graswick an email simply stating "error" or "error on the PM Checklist." (ECF No. 25-6 at 6, McGinnis Dep. at 18; ECF No. 25-10 at 14). According to Plaintiff, he had not sent the PM Checklist because the computer system was down, and Adams acknowledged that she had received an email that the system had been down. (ECF No. 25-6 at 5-6, McGinnis Dep. at 16-17; ECF No. 25-10 at 14). Upon his return from physical therapy, Adams gave Plaintiff a "pre-disciplinary interview" or "PDI", because, according to Adams, Graswick was of the view that Plaintiff's explanation had been inadequate. (ECF No. 25-10 at 15). Plaintiff was not, however, subjected to any discipline for failing to submit the PM Checklist. (ECF No. 25-6 at 8, McGinnis Dep. at 26).

After the PDI, Plaintiff claimed that his back was sore after working for approximately six hours and he submitted a leave request to Adams. (ECF No. 25-7 at 5). This leave request

---

[2]Plaintiff was in a car accident on July 31, 2011 and was attending physical therapy appointments for back pain. (ECF No. 28-4 ¶ 18).

was on PS Form 3971, entitled "Request for or Notification of Absence."  (ECF No. 27-7 at 38).

Under the "Type of Absence" requested, Plaintiff checked "Other."  (ECF No. 27-7 at 38).  The

Employee and Labor Relations Manual ("ELM") requires an employee to obtain prior approval

from his or her supervisor for all absences.  (ECF No. 25-15 at 14, § 519.742) ("[E]xempt

employees must obtain prior approval from their supervisors for all absences, whether or not

such absences are to be charged to the employee's leave account.").  Plaintiff claims that he

personally handed Adams the PS Form 3971, and left the building after about fifteen minutes.

(ECF No. 25-6 at 8, McGinnis Dep. at 28-30).  Adams testified, however, that Plaintiff left the

form on her desk and she found it upon returning from another part of the building.  (ECF No.

25-10 at 22-23).  According to Adams, Plaintiff had already left the building when she found the

form.  (ECF No. 25-10 at 22-23).

It is undisputed that Plaintiff did not obtain prior approval from Adams before leaving the

building.  Plaintiff averred that he "left about two hours before the end of his shift, after

assuming [PS Form 3971] would be signed … ."  (ECF No. 28-4 ¶ 25).  Graswick instructed

Adams to remove Plaintiff's "clock rings" for August 4, 2011, and charge him with being

AWOL.  (ECF No. 25-9 at 3).  Adams disapproved Plaintiff's leave request because he left the

building without obtaining prior approval.  (ECF No. 25-10 at 22-23; ECF No. 25-7 at 38).

Graswick authorized a payroll adjustment and Plaintiff was paid for August 4, 2011, at a later

date.  (ECF No. 25-11 at 4; ECF No. 25-6 at 10, McGinnis Dep. at 36).

Plaintiff was scheduled to work on August 5, 2011, and August 6, 2011.  (ECF No. 31 ¶

30).  Plaintiff testified that he had injured his leg the previous evening playing with his

grandchild and had pulled a muscle and could not walk.  (ECF No. 25-6 at 12, McGinnis Dep. at

42).  On the morning of August 5, 2011, Plaintiff called in sick and spoke with Thomas.  (ECF

No. 25-6 at 12, McGinnis Dep. at 42; ECF No. 31 ¶ 33). Plaintiff testified that supervisors are instructed to call off to a manager, which, in this case, would have been Adams. (ECF No. 25-6 at 12, McGinnis Dep. at 43; ECF No. 25-9 at 7). Thomas instructed Plaintiff that he needed to call Adams, pursuant to Postal Service regulations. (ECF No. 31 ¶ 34). Plaintiff did not, however, call Adams and inform her that he was calling off sick. (ECF No. 31 ¶ 35). Instead, Plaintiff came to the office at around 10:00 a.m. in order to pick up a picnic cooler for a family reunion he was attending the next day. (ECF No. 25-6 at 12, McGinnis Dep. at 44, 47-48).

Plaintiff and Gaetano both testified that Gaetano had previously granted Plaintiff's request for personal time to attend the picnic. (ECF No. 25-6 at 13, McGinnis Dep. at 48; ECF No. 28-3 at 19). Plaintiff, however, had not filled out a leave slip in advance, and Gaetano acknowledged that Plaintiff should have filled out a leave slip if requested by Adams since it was required by the ELM. (ECF No. 28-3 at 53-55). According to Adams, when Plaintiff came in to the office to pick up the cooler, he informed her that his knee hurt and he was unable to come to work. (ECF No. 25-10 at 29). When informed about this reason by Adams, Graswick stated that he was "floored" Plaintiff came in to pick up a cooler when he was allegedly "sick." (ECF No. 28-2 at 35-36).

Graswick testified that he demanded Plaintiff provide a medical excuse after he had "sashayed" into the office to pick up a cooler. (ECF No. 28-2 at 40). Graswick was of the opinion that if Plaintiff was well enough to come in and pick up a cooler, then he was well enough to work. (ECF No. 28-2 at 45). Plaintiff claims, however, that neither Graswick or Adams asked him for a medical excuse. (ECF No. 25-6 at 15, McGinnis Dep. at 54; ECF No. 28-4 ¶ 39(a)). Because Plaintiff failed to provide medical documentation, and because Plaintiff had represented that he was in too much pain to work yet came in a picked up a cooler, Graswick

charged Plaintiff with being AWOL for those two days. (ECF No. 25-11 at 5). Graswick

testified that the following Monday he had a conversation with Adams who stated that her

husband had seen Plaintiff at the picnic and that he was "probably" playing softball. (ECF No.

28-2 at 56).[3] According to Graswick, at the EEOC mediation, Adams indicated that she was not

sure if Plaintiff was playing softball or cooking behind a grill. (ECF No. 28-2 at 60). Graswick

indicated, however, that whether Plaintiff was playing softball or cooking was irrelevant to him,

since Plaintiff should have been at work. (*Id.*).

Plaintiff's chiropractor completed an absence authorization form on August 5, 2011,

stating that Plaintiff should not return to work until August 8, 2011, due to a strained right calf

muscle. (ECF No. 25-7 at 39). Plaintiff provided this medical documentation to Defendant in

September 2011 at a meeting related to his EEOC case. (ECF No. 25-11 at 5; ECF No. 28-4 ¶

43). According to Graswick, he informed Plaintiff he would pay him for those two days in light

of this documentation, but Plaintiff declined, stating that he wanted to move forward with his

EEOC claim. (ECF No. 25-11 at 5).

On August 9, 2011, Plaintiff submitted Forms CA-1 and CA-2 under the Federal

Employees' Compensation Act, 5 U.S.C. § 8101 et seq., claiming that he was suffering from

mental stress based upon management's refusal to pay him for the hours he worked and sick

leave requested. (ECF No. 25-7 at 55, 57). According to Plaintiff, an employee was usually

given sick leave for at least three days while awaiting initial agency approval for a worker's

compensation claim. (ECF No. 28-4 ¶ 45(a)). Plaintiff was absent from work from August 10,

2011, through August 12, 2011, and requested sick leave until his worker's compensation claim

was adjudicated. (ECF No. 25-11 at 6; ECF No. 28-4 ¶ 45(b)). Graswick, however, made the

---

[3]Adams' husband and brother-in-law submitted statements dated August 9, 2011, stating they had witnessed Plaintiff unloading food and cooking at the picnic while they were out on a motorcycle ride. (ECF No. 25-16; ECF No. 25-17). Graswick, however, was not aware of these written statements until the day of his deposition. (ECF No. 28-2 at 55).

decision to charge Plaintiff with being AWOL. Graswick considered Plaintiff's reasons for feeling stressed "hard to believe" because at that time Plaintiff had not yet received a paycheck reflecting the nonpayment for those days. (ECF No. 25-11 at 6). Plaintiff was not paid for sick leave from August 10, 2011, through August 12, 2011, because Graswick concluded that Plaintiff's reason for his absence was "insufficient" and "not credible." (ECF No. 25-11 at 6). Plaintiff, on the other hand, contends that as a management official, he had access to the timekeeping program and was "acutely aware at all times when he was or was not getting paid." (ECF No. 28-4 ¶ 48).

Plaintiff filed a formal Equal Employment Opportunity ("EEO") complaint on October 3, 2011. (ECF No. 31 ¶ 1). Plaintiff alleged discrimination based on his race (African American), color (Black), sex (Male), and age (52), when he was charged for being AWOL on August 4, 2011, when he was charged for being AWOL after calling off sick on August 5 and 6, 2011, and when he was not paid sick leave for August 10, 11, and 12, 2011. (ECF No. 31 ¶ 1). On October 24, 2011, the EEOC accepted Plaintiff's complaint for investigation and limited that investigation to the issues of discrimination raised in the complaint. (ECF No. 31 ¶ 2). Plaintiff did not disagree with the EEOC's accepted issues of investigation, and did not at any time amend his formal complaint. (ECF No. 31 at 3-4). A final agency decision on Plaintiff's complaint was issued on September 28, 2012. (ECF No. 31 ¶ 6).

Based upon the preceding events, Plaintiff filed the instant lawsuit on December 27, 2012, alleging that Defendant discriminated against him based upon his race, color, sex, and age in violation of Title VII and the ADEA. (ECF No. 1). Plaintiff also alleged that he was subject to "hostile work environment discrimination and harassment" and retaliation in violation of Title VII and the ADEA. (ECF No. 1 ¶¶ 6, 10, 19).

Pending before the court is the Defendant's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (ECF No. 22). A supporting brief, concise statement of material facts, appendices, counter statement of material facts, a reply brief and a combined statement of material facts were also filed by the parties. (ECF Nos. 23-29, 31). Accordingly, the matter is ripe for disposition.

### III. Standard of Review

Federal Rule of Civil Procedure 56 provides in relevant part:

**(a) Motion for Summary Judgment or Partial Summary Judgment.** A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion. ....

**(c) Procedures.**

**(1)** *Supporting Factual Positions*. A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

**(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

**(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

FED. R. CIV. P. 56(a), (c)(1)(A), (B). The Third Circuit Court of Appeals has stated:

Rule 56 of the Federal Rules of Civil Procedure "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."

*Marten v. Godwin*, 499 F.3d 290, 295 (3d Cir. 2007) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

An issue of material fact is in genuine dispute if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248; *see Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007) ("A genuine issue is present when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the non-moving party in light of his burden of proof.") (citing *Celotex Corp.*, 477 U.S. at 322-23; *Anderson*, 477 U.S. at 248).

> [W]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts…. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'

*Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). The court must rely on the substantive law to identify which facts are material. *Abington Friends Sch.*, 480 F.3d at 256 (citing *Anderson*, 477 U.S. at 248).

In deciding a summary judgment motion, a court must view the facts in the light most favorable to the nonmoving party, and must draw all reasonable inferences and resolve all doubts in favor of the nonmoving party. *Doe v. Cnty. of Centre, Pa.*, 242 F.3d 437, 446 (3d Cir. 2001); *see Woodside v. Sch. Dist of Phila. Bd. of Educ.*, 248 F.3d 129, 130 (3d Cir. 2001); *Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 151 (3d Cir. 1999). A court must not engage in credibility determinations at the summary judgment stage. *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 643 n.3 (3d Cir. 1998).

## IV. <u>Discussion</u>

Plaintiff claims that Defendant discriminated against him on the basis of his race, color, sex and age by charging him with being AWOL on August 4, 2011, and August 5-6, 2011, and not paying him for sick leave on August 10-12, 2011. In moving for summary judgment, Defendant argues that Plaintiff failed to establish a prima facie case of discrimination under Title VII and the ADEA, and, alternatively, that the USPS articulated a legitimate, nondiscriminatory reason for its decisions. Defendant further argues that summary judgment is warranted with respect to Plaintiff's hostile work environment and retaliation claims, since he failed to exhaust administratively these claims.

In analyzing Plaintiff's discrimination claims under Title VII and the ADEA, the court's analysis is guided by the familiar burden-shifting paradigm of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under the *McDonnell Douglas* burden-shifting analysis, a complainant carries the initial burden of establishing a prima facie case by demonstrating that: (1) he is a member of a "protected class"; (2) he is "qualified for the position"; (3) he "was subject to an adverse employment action despite being qualified"; and (4) the adverse employment action occurred under circumstances that raise an inference of unlawful discrimination. *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 n.7 (3d Cir. 2003) (citing *McDonnell Douglas*, 411 U.S. at 802; *Pivirotto v. Innovative Sys., Inc.*, 191 F.3d 344, 348 n.1, 352, 356 (3d Cir. 1999)). The question whether a plaintiff has established his prima facie case is a question of law to be determined by the court. *Sarullo*, 352 F.3d at 797.

If the plaintiff successfully establishes a prima facie case, the burden then shifts to the employer to articulate some legitimate nondiscriminatory reason for the adverse employment action. *Id.* (citing *McDonnell Douglas*, 411 U.S. at 802). Once the employer does so, the burden then shifts back to the plaintiff to prove by a preponderance of the evidence that the legitimate

reasons proffered by the employer were merely a pretext for discrimination, and not the true

motivation for the adverse employment action. *Id.* (citing *Texas Dep't of Cmty. Affairs v.*

*Burdine*, 450 U.S. 248, 252–53 (1981)).

The *McDonnell Douglas* framework does not apply in employment discrimination cases

where there is direct evidence of discrimination. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506,

511 (2002). In cases in which direct evidence of discrimination is presented, there is no need for

an "inference" of discrimination, since the discrimination itself is transparent. In this case,

however, Plaintiff presented no direct evidence of discrimination. Accordingly, the court will

analyze Plaintiff's claims using the *McDonnell Douglas* framework.

A. *Discrimination claims*

1. *Prima Facie Case*

Title VII provides that it is "an unlawful employment practice for an employer ... to

discriminate against any individual with respect to compensation, terms, conditions or privileges

of employment because of such individual's race, color, religion, sex or national origin[.]" 42

U.S.C. § 2000e–2(a)(1). To establish a prima facie case for discrimination, the plaintiff must

demonstrate four factors: (1) membership in a protected group; (2) qualification for the job in

question; (3) adverse employment action; and (4) circumstances that support an inference of

discrimination. *Swierkiewicz*, 534 U.S. at 510; *Mandal v. M & Q Packaging Corp.*, 706 F.3d

157, 169 (3d Cir. 2013) (citing *Makky v. Chertoff*, 541 F.3d 205, 214 (3d. Cir. 2008)). Only the

fourth factor is in dispute in this case. A plaintiff may demonstrate an inference of

discrimination by showing that others not in the protected class but similarly situated were  more

favorably treated. *Roebuck v. Drexel Univ.*, 852 F.2d 715, 726 (3d Cir. 1988); *Houston v. Easton*

*Area Sch. Dist.*, 355 F. App'x 651, 654 (3d Cir. 2009).

The ADEA similarly mandates that "[a]ll personnel actions affecting employees ... who are at least 40 years of age ... in the United States Postal Service ... shall be made free from any discrimination based on age." 29 U.S.C. § 633a(a). To establish a prima facie case of age discrimination, a plaintiff must produce evidence that is sufficient to convince a reasonable jury that he (1) was a member of the protected class, i.e., was 40 years of age or older, (2) suffered an adverse employment action, (3) was qualified for the job, and (4) was treated less favorably than a sufficiently younger person under circumstances giving rise to an inference of age discrimination. *Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1108 (3d Cir. 1997) (citing *Sempier v. Johnson & Higgins*, 45 F.3d 724, 728 (3d Cir. 1995)). In order to satisfy the fourth element, a plaintiff must show that similarly situated younger employees were treated more favorably than he. *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 798 (3d Cir. 2003) (citing *Pivirotto v. Innovative Sys., Inc.*, 191 F.3d 344, 352 (3d Cir. 1999)).

To succeed on an age-based discrimination claim, a plaintiff must demonstrate that his or her age "was the 'but-for' cause of the employer's adverse decision," *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009), and that it "'actually played a role in [the employer's decisionmaking] process and had a determinative influence on the outcome.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 141 (2000) (quoting *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993)).[4]

Plaintiff's discrimination claims are grounded upon his contention that two possible comparators-Adams and Thomas-were more favorably treated. Evidence that an employee was disciplined more severely than an employee in a non-protected class is relevant only if the comparators and the plaintiff are "similarly situated." *Maull v. Div. of State Police*, 39 F. App'x

---

[4]In ADEA cases where there is no direct evidence of discrimination, the Court of Appeals for the Third Circuit applies the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Smith v. City of Allentown*, 589 F.3d 684, 691 (3d Cir. 2009) ("[T]he but-for causation standard required by *Gross* does not conflict with our continued application of the *McDonnell Douglas* paradigm in age discrimination cases.").

769, 773 (3d Cir. 2002) (citing *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994). "Similarly situated" does not mean the comparators must be identical, only that "they are alike in all relevant respects." *Royster v. Laurel Highlands Sch. Dist.*, 994 F. Supp. 2d 701, 710 (W.D. Pa.), *aff'd,* ___ Fed. App'x ___, (3d Cir. 2014); *Op      satnik v. Norfolk Southern Corp.*, Civil Action No. 06-81, 2008 WL 763745 at *7 (W.D.Pa. Mar. 20, 2008); *aff'd*, 335 F. App'x 220 (3d Cir. 2009). A determination of whether employees are similarly situated takes into account factors such as the employees' job responsibilities, the supervisors and decision-makers, and the nature of the misconduct engaged in. *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 259-61 (5th Cir. 2009); *Burks v. Wis. Dep't of Transp.*, 464 F.3d 744 (7th Cir. 2006); *see Wilcher v. Postmaster General*, 441 F. App'x 879, 882 (3d Cir. 2011) (accepting standard used by other circuits and holding that comparators must be "similarly situated in all relevant respects"), *cert. denied*, 132 S.Ct. 1645 (2012). Whether alleged comparators are similarly situated is a case-specific analysis, and one which is appropriate for the district court to evaluate at the summary judgment stage. *Maull*, 39 F. App'x at 773 (citing *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 689, 645 (3d Cir. 1998)).

Plaintiff's comparator "evidence" consists of the following:

> Supervisors Lenore Thomas and Jeanie Adams took off from work and they were paid, neither had to document or support there (*sic*) absence, Thomas called off work 1 week later on [A]ugust 17 and 18[,] 2011[,] and Adams took annual leave on [A]ugust 11 and 12[,] 2011 and September 10[,] 2011[;] she also requested other leave on September 9[,] 2011.

(ECF No. 25-1 at 3). Adams and Thomas are both women; Adams is African-American and Thomas is Caucasian.[5] (ECF No. 31 ¶ 54).

---

[5]       Adams, who was 46-years-old in 2011, and Thomas, who was 44-years-old in 2011, are younger than Plaintiff, but in the same protected age group (over 40) as Plaintiff. (Id.). This fact, however, is not fatal to plaintiff's claim under the ADEA. "The fact that one person in the protected class has lost out to another person in the protected class is…irrelevant, so long as he has lost out *because of his age.*" O'Connor v. Consol. Caterers Corp., 517 U.S. 308, 311 (1996)). The Third Circuit Court of Appeals recognized this principle in Barber v. CSX Distribution Services, explaining:

While Plaintiff and his comparators were supervisors and had the same job grade, it is undisputed that Adams was acting as Plaintiff's supervisor during the events in question. Thus, Adams was not in a similar position as Plaintiff and cannot be similarly situated to him. *See Wilcher*, 441 F. App'x at 882 (relevant factors include, *inter alia*, similar job responsibilities); *Osuala v. Community College of Phila.*, No. CIV. A. 00-98, 2000 WL 1146623, at *7 (E.D.Pa. Aug. 15, 2000) (noting that employees cannot be similarly situated to their supervisors), *aff'd*, 259 F.3d 717 (3d Cir.), *cert. denied*, 534 U.S. 896 (2001).

Even if Adams' position was similar, it is undisputed that both Adams and Thomas had a different supervisor (Gaetano) at the time of their respective absences. *See Carter v. Midway Slots and Simulcast*, 511 F. App'x 125, 128 (3d Cir.) (plaintiff "not similarly situated for Title VII purposes because they did not share the same supervisor"), *cert. denied*, 134 S.Ct. 138 (2013); *Neely v. U.S. Postal Service*, 307 F. App'x 681, 684 (3rd Cir. 2009) (plaintiff and a fellow employee "were not similarly situated...for Title VII purposes because they did not share the same supervisor); *Mercado v. Donahoe*, 487 F. App'x 15, 18 (3d Cir. 2012) (similarly situated analysis includes whether the comparator employee has the same supervisor as the

---

A plaintiff under the ADEA need not show that the successful candidate was someone who was not in the protected class, i.e. below age 40. All that need be shown is that the beneficiary of the alleged discrimination is "sufficiently younger" to permit an inference of age discrimination.

Barber v. CSX Distrib. Servs., 68 F.3d 694, 699 (3d Cir. 1995) (citing Maxfield v. Sinclair Int'l, 766 F.2d 788, 792 (3d Cir. 1985)).

While the court of appeals in Barber noted "[t]here is no magical formula to measure a particular age gap and determine if it is sufficiently wide to give rise to an inference of discrimination[,]" an analysis of decisions from courts within the Third Circuit with respect to this issue provide guidance. See e.g., Healy v. N.Y. Life Ins. Co., 860 F.2d 1209 (3d Cir. 1988) (holding a **nine-year** age difference was sufficient to establish the *prima facie* case of age discrimination); Barber, 68 F.3d at 699 (holding an **eight-year** difference between the plaintiff and the person hired for the job at issue could support a finding that the person hired for the job at issue was sufficiently younger than the plaintiff); Narin v. Lower Merion School Dist., 206 F.3d 323, 333 n. 9 (3d Cir. 2000) (holding 56-years-old was not "materially" different than 49-years-old, i.e., a **seven-year** age difference was insufficient to establish the *prima facie* case); Lloyd v. City of Bethlehem, Civ. Action No. 02-830, 2004 WL 540452, at *6 (E.D. Pa. Mar. 3, 2004) ("The caselaw in this Circuit consistently holds that **an age gap of less than five years** is, as a matter of law, insufficient to establish fourth element of the prima facie test.") (emphasis added); Gutknecht v. SmithKline Beecham Clinical Labs., Inc., 950 F.Supp. 667, 672 (E.D. Pa. 1996) ("Although no uniform rule exists, it is generally accepted that when the difference in age between the fired employee and his or her replacement **is fewer than five or six years**, the replacement is not considered 'sufficiently younger,' and thus no prima facie case is made.") (emphasis added).

Based upon the foregoing collection of decisions, Adams, who is six years younger than plaintiff, is not "sufficiently younger" than plaintiff under the ADEA, while Thomas, who is eight years younger than plaintiff most likely *is* "sufficiently younger" than plaintiff under the ADEA. For reasons stated in the body of this opinion, however, neither Adams nor Thomas were similarly situated with plaintiff under the ADEA.

plaintiff). Gaetano testified that as acting manager in his absence, it was Adams' "call" with respect to Plaintiff. (ECF No. 28-3 p. 37).

To the extent Graswick could be considered the sole decisionmaker since Adams acted pursuant to his direction, Plaintiff did not present any evidence surrounding the circumstances of the absences taken by Adams or Thomas. Indeed, all the record reveals is that Adams and Thomas took time off from work for different reasons. Plaintiff did not show that Adams or Thomas left work without prior authorization, or that Graswick doubted the veracity of their reasons for their absences yet chose to pay them anyway. In other words, Plaintiff failed to demonstrate that Adams and Thomas engaged in conduct of "'comparable seriousness.'" *Mitchell v. City of Pittsburgh*, 995 F. Supp. 2d 420, 431 (W.D.Pa. 2014) (quoting *Nguyen v. AK Steel Corp.*, 735 F. Supp. 2d 346, 361 (W.D.Pa. 2010)). Without further information, which should have been readily available in discovery, the court could not conclude that a reasonable jury would find Adams or Thomas were, in fact, similarly situated to Plaintiff.

Simply put, because there is no evidence of record that Adams and Thomas are similarly situated to Plaintiff, and because Plaintiff failed to proffer any evidence of other postal employees who were younger, non-African-American women, and treated more favorably than he under similar circumstances, the court concludes that no reasonable jury could find that Plaintiff established the fourth prong of his prima facie case based on race, color, sex or age discrimination. The court's review of the record did not reveal any other evidence that would reasonably support an inference of discrimination for purposes of Plaintiff's prima facie case. Under those circumstances, the court must grant Defendant's motion for summary judgment with respect to these claims.[6]

---

[6]Although not argued by Defendant, summary judgment is also appropriate with respect to the August 4, 2011 AWOL incident for the additional reason that Plaintiff did not suffer an adverse employment action. While Plaintiff was originally charged with being AWOL on that date, it is

2. *Pretext*

Alternatively, even if Plaintiff had adduced sufficient evidence to support a prima facie case for his Title VII and ADEA claims. Defendant submitted evidence of a legitimate nondiscriminatory reason for the adverse action and summary judgment would nonetheless be appropriate based upon Plaintiff's failure to raise a triable issue of fact with respect to pretext. At the summary judgment stage, a plaintiff can demonstrate a genuine issue of fact with respect to pretext by presenting some evidence "from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Stanziale v. Jargowsky*, 200 F.3d 101, 105 (3d Cir. 2000) (citing *Keller v. Orix Credit Alliance, Inc*, 130 F.3d 1101, 1108 (3d Cir. 1997); *Brewer v. Quaker State Oil Refining Corp.*, 72 F.3d 326, 331 (3d Cir. 1995).

a.) *First Prong*

A plaintiff can establish the first prong by "demonstrat[ing] such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder *could* rationally find them 'unworthy of credence.'" *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994) (quoting *Ezold v. Wolf, Block, Schorr & Solis–Cohen*, 983 F.2d 509, 531 (3d Cir. 1992))(emphasis in original). A plaintiff may not, however, "'simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent.'" *Keller v. Orix Credit Alliance,*

---

undisputed that he was subsequently paid. "[A] rescinded or unenforced employment decision does not constitute an adverse employment action." *Lanza v. Donahoe*, Civil Action No. 10-6737, 2013 WL 5477160, at *6 (D.N.J. Sept. 30, 2013) (citing decisions), *aff'd,* 570 F. App'x 236 (3d Cir. 2014); *Gonzales v. Potter*, Civil Action No. 09-534, 2010 WL 2196287, at *6 (W.D.Pa. June 1, 2010) (citing decisions); *Wormack v. Shinseki*, Civil Action No. 2:09-cv-916, 2010 WL 4052189, at *4 (W.D.Pa. Oct. 14, 2010) ("a rescinded or unenforced employment decision does not rise to the level of an actionable adverse employment action unless and until there is a 'tangible change in the duties or working conditions constituting a material employment disadvantage'").

*Inc.*, 130 F.3d 1101, 1108 (3d Cir. 1997) (quoting *Fuentes*, 32 F.2d at 765). In other words, the plaintiff must show "not merely that the employer's proffered reason was wrong, but that it was so plainly wrong that it cannot have been the employer's real reason." *Keller*, 130 F.3d at 1109.

Plaintiff in his affidavit suggests several reasons why Defendant's reasons for its decisions are "unworthy of credence." *Fuentes*, 32 F.3d at 765.[7] With respect to the August 4, 2011 incident, Plaintiff contends that there is a factual dispute with respect to whether he handed the leave slip to Adams or left it on her desk, as well as the circumstances surrounding her disapproval of his request. (ECF No. 28-4 ¶¶ 21, 24(c)). Whether Plaintiff thought he was following appropriate procedure in requesting leave is immaterial, however, since Plaintiff concedes that he left the building without obtaining Adams' prior approval as required by the ELM. (ECF No. 28-4 ¶ 25).

Regarding the August 5 and 6, 2011 incident, Plaintiff appears to suggest that because Adams allegedly knew Plaintiff was scheduled to attend a family picnic, marking him AWOL for that time period was pretextual. Plaintiff , however, did not fill out a leave slip in advance requesting personal or other leave in order to attend the picnic; rather, he claimed he was sick, and Adams and Graswick were of the view that Plaintiff was not, in fact, sick. Plaintiff claims that Adams lied to Graswick when she allegedly informed him that Plaintiff was playing softball at the picnic. Even if Adams "lied" to Graswick, Plaintiff himself states that her motive for doing so was because she "was angry that she had to work twelve hours as a Manager and felt inconvenienced for working twelve hours[,]" *see* (ECF No. 28-4 ¶ 48(k)), and not because of any discriminatory animus. There is no evidence that Graswick knew or had reason to know Adams was lying. *See Gibson v. Sharon Regional Hosp. Sys.*, Civil Action No. 09-604, 2011 WL

---

[7] Because the Plaintiff did not functionally file a Brief in opposition, *see supra* n.1, the court reviewed Plaintiff's affidavit for evidence that would support that Defendant's stated reasons were pretextual pursuant to *Fuentes*.

1044657, at *14 (W.D.Pa. Mar. 18, 2011) (plaintiff failed to adduce evidence calling into question management's reliance on the truthfulness of other employees).

Plaintiff assigns significance to Graswick's use of the term "sashay" during his deposition in describing Plaintiff's demeanor when he came in to pick up the cooler. Graswick testified that he requested Adams demand a medical excuse from Plaintiff after he "sashayed into the office to pick up a company cooler to go to a picnic on Saturday." (ECF No. 28-2 at 40-41). Graswick testified that he meant "walking, … the way [Plaintiff] strutted in there." (ECF No. 28-2 at 41). Graswick's utilization of the term is consistent with its definition: "sashay" means to "walk or proceed, especially in an easy or casual manner … to strut or flounce in a showy manner[.]" http://www.thefreedictionary.com/sashay; *see also* http://www.merriam-webster.com/dictionary/sashay ("to walk in a slow and confident way that makes people notice you … to strut or move about in an ostentatious or conspicuous manner").

Plaintiff did not provide and the court's independent research did not reveal any evidence that the term "sashay" has an exclusive or predominately discriminatory meaning. Assigning a racially or other discriminatory derogatory meaning to the term as a matter of law would be based upon mere speculation. "[A]n inference based upon speculation or conjecture does not create a material factual dispute sufficient to defeat entry of summary judgment." *Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 382 n.12 (3d Cir.1990) (citing *Blackston v. Shook & Fletcher Insulation Co.,* 764 F.2d 1480, 1482 (11th Cir. 1985). Plaintiff's subjective belief that the term "sashay" has a racial connotation, without more, is insufficient evidence of pretext.

With respect to the last period at issue, Plaintiff suggests that Graswick's stated reason for charging him with being AWOL, namely, that he did not believe Plaintiff could be stressed about not being paid because he had not yet received a paycheck, is pretextual since Plaintiff did

know he was not being paid because he had access to the timekeeping system. (ECF No. 28-4 ¶ 48). Even if Plaintiff is correct, "it is not enough for a plaintiff to show that an employer's decision was wrong or mistaken, because the issue is whether the employer acted with discriminatory animus." *Abramson v. William Paterson College*, 260 F.3d 265, 283 (3d Cir. 2001). Again, there is no evidence to suggest that Graswick did not genuinely believe that Plaintiff could not have known he was not being paid.[8]

Finally, to the extent Plaintiff relies upon Gaetano's deposition testimony that whether Plaintiff was sick or not did not matter in light of his attendance record, *see* (ECF No. 28-3 at 44), that reliance is unavailing. It is undisputed that Gaetano was not the decisionmaker with respect to any of the employment decisions at issue, and he acknowledged that the decisions at issue were up to Adams and Graswick. (ECF No. 28-3 at 32-33). His management style or opinion of how the policy should have been applied to Plaintiff is irrelevant. *See e.g., Iadimarco v. Runyon*, 190 F.3d 151, 156 n.5 (3d Cir. 1999) (rejecting as irrelevant the opinion of the individual who was not involved in the employment decision); *cf. Mercado*, 487 F. App'x at 19 ("what matters is the perception of the decision maker").

### 2. Second Prong

To satisfy the second prong, the plaintiff must point to evidence "that proves ... discrimination in the same way that critical facts are generally proved-based solely on the natural probative force of the evidence." *Keller*, 130 F.3d at 1111. The plaintiff can establish the second prong by showing that the employer in the past subjected him to unlawful discriminatory treatment, that the employer treated other, similarly situated persons not within his class more

---

[8] The summary judgment record reveals that Graswick was the sole decisionmaker with respect to this last incident. (ECF No. 25-9 at 8-9; ECF No. 25-11 at 7). Plaintiff acknowledges as much, but is of the belief that Adams nonetheless conspired with Graswick in charging him with being AWOL. (ECF No. 28-4 ¶ 47). Plaintiff cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in order to defeat summary judgment. *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir. 1989).

favorably, or that the employer discriminated against other members of his protected class. *Fuentes*, 32 F.3d at 765.

With respect to the second prong of the pretext analysis, Plaintiff offered no evidence that Defendant subjected him to discriminatory treatment in the past or that Defendant discriminated against other members of the protected class. To the extent Plaintiff relies upon the same comparator evidence as his prima facie case, as previously discussed, neither Adams nor Thomas are similarly situated to Plaintiff. Therefore, Defendant's treatment of these individuals is insufficient to establish pretext.

For the reasons discussed above, the court concludes that the evidence of record, when viewed in the light most favorable to the Plaintiff and drawing all inferences in his favor, fails to raise a triable issue of fact about whether Defendant's proffered reasons were pretextual.

### B. Hostile Environment and Retaliation claims

As a precondition for filing suit under Title VII and the ADEA, a plaintiff must exhaust a claim by presenting it in an administrative charge to the EEOC. *Antol v. Perry*, 82 F.3d 1291, 1295-96 (3d Cir. 1996); *Kosakoski v. PNC Financial Serv. Group, Inc.*, Civil Action No. 12-cv-38, 2013 WL 5377863, at *11 (E.D.Pa. Sept. 26, 2013) (citing *Thompson v. Keystone Human Servs.*, Civ. No. 1:09-cv-2558, 2012 WL 398619 at *5 (M.D.Pa. 2012)). "The purpose of the administrative exhaustion requirement is to 'put the EEOC on notice of the plaintiff's claims and afford it the opportunity to settle disputes through conference, conciliation, and persuasion, avoiding unnecessary action in court.'" *Kosakoski,* 2013 WL 5377863, at *11 (quoting *Thompson*, 2012 WL 398619, at *5).

The "'parameters of the civil action'" in federal court are defined by the scope of the EEOC charge. *Kosakoski*, 2013 WL 5377863, at *11 (quoting *Butterbaugh v. Chertoff*, 479

F.Supp.2d 485, 497 (W.D.Pa. 2007)). An action alleging violations of Title VII or the ADEA must therefore "'fall fairly within the scope of the prior EEOC complaint or the investigation arising therefrom.'" *Id.* (quoting *Butterbaugh*, 479 F. Supp.2d at 497). To determine the "scope" of the charge, a court must consider the extent of the investigation that "'can reasonably be expected to grow out of the [EEOC] charge[s].'" *Hicks v. ABT Assoc., Inc.*, 572 F.2d 960, 966 (3d Cir. 1978) (quoting *Ostapowicz v. Johnson Bronze Co.*, 541 F.2d 394, 399 (3d Cir. 1976)); *Howze v. Jones & Laughlin Steel Corp.*, 750 F.2d 1208, 1212 (3d Cir. 1984) ("[A] district court may assume jurisdiction over additional charges if they are reasonably within the scope of the complainant's original charges….").

### 1. Hostile Work Environment Claims

A hostile work environment exists when a workplace is permeated with discriminatory intimidation, ridicule and insult so severe or pervasive as to alter the terms and conditions of the victim's employment and create an abusive working environment. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). Conduct that is not sufficiently severe or pervasive to create an objectively hostile or abusive environment is not actionable. *Id.* "[C]onduct must be extreme to amount to a change in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998). Incidents of harassment are pervasive if they occur in concert or with regularity. *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1484 (3d Cir. 1990).

To establish a hostile work environment claim, a plaintiff must show : 1) he suffered intentional discrimination because of his protected status; 2) the discrimination was pervasive and regular; 3) the discrimination detrimentally affected the plaintiff, 4) the discrimination would detrimentally affect a reasonable person of the same protected status in that position; and 5) the

existence of *respondeat superior* liability. *Jensen v. Potter*, 435 F.3d 444, 449 (3d Cir. 2006), *overruled on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006). The first four elements establish a prima facie hostile work environment case, and the fifth element establishes employer liability. *Huston v. Procter & Gamble Paper Prods. Corp.*, 568 F.3d 100, 104 (3d Cir. 2009).

In his administrative complaint, Plaintiff checked boxes indicating that he was discriminated against on the basis of race, color, sex, and age. (ECF No. 25-1 at 1). He indicated that this discrimination took place from August 4, 2011 to August 6, 2011, and from August 10, 2011 to August 12, 2011. (*Id.*). In the narrative section, he related that Graswick had instructed Adams to remove his clock rings and input AWOL for a day he had worked, and leave without pay him for two days for sick leave he had requested even though he had followed all postal rules. (*Id.*). Plaintiff related that Adams and Thomas took off work and were paid, and neither had to document or support their absences. (ECF No. 25-1 at 3). Plaintiff did not, at any time, amend his formal complaint with the EEOC to include additional claims of discrimination or to supplement his factual allegations. (ECF No. 31 ¶ 6).

Nowhere in Plaintiff's administrative complaint did he state or allege any facts which would show that he had been subjected to a hostile work environment on the basis of his race, color, sex, or age.[9] To the extent Plaintiff adheres to the belief that he was subjected to a hostile environment, that a claim is not within the scope of his EEOC complaint or the investigation which could reasonably have been expected to flow from the claims of discrimination asserted in his administrative charge. *See, e.g., Barzanty v. Verizon Pa., Inc.*, 361 F. App'x 411, 414 (3d Cir. 2010) (hostile work environment claim not within the scope of plaintiff's EEOC charge);

---

[9] The court observes that Plaintiff's complaint in the instant case fails to allege any facts that would support a viable hostile environment claim during the relevant time period. (ECF No. 1).

*Jeffries v. Potter*, Civil Action No. 06-707, 2009 WL 423998, at *4-5 (D.Del. Feb. 19, 2009)

(same).  Therefore, Plaintiff failed to administratively exhaust any hostile environment claim,

and summary judgment will be granted with respect to any purported hostile environment claim.

### 2. Retaliation Claims

With respect to Plaintiff's retaliation claims, Title VII and the ADEA protect employees

who attempt to exercise the rights guaranteed by those acts against retaliation by employers.  42

U.S.C. § 2000e–3(a); 29 U.S.C. § 623(d).  To establish a prima facie case of retaliation, a

plaintiff must show that: (1) he or she engaged in a protected employee activity; (2) the employer

took an adverse employment action after or contemporaneous with the protected activity; and (3)

a causal link exists between the protected activity and the adverse action. *Weston v. Pa.*, 251

F.3d 420, 430 (3d Cir. 2001), *overruled in part on other grounds by  Burlington N. & Santa Fe

Ry. Co. v. White*, 548 U.S. 53 (2006)).[10]  Evidence of any retaliation claim needs to show that the

employee engaged in protected activity and, as a result, was the subject of an adverse

employment action.  *Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561, 567-68 (3d Cir. 2002);

*Goosby v. Johnson & Johnson Med., Inc.*, 228 F.3d 313, 323 (3d Cir. 2000).  Activities protected

from retaliation include opposing any practice made unlawful by Title VII or the ADEA; making

a charge of employment discrimination; or testifying, assisting or participating in any manner in

an investigation, proceeding or hearing under Title VII or the ADEA. *See* 42 U.S.C. § 2000e–

3(a).  General complaints of unfair treatment are not enough to constitute protected activity.

*Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc.*, 450 F.3d 130, 135 (3d Cir. 2006).

In his EEOC complaint, Plaintiff did not check the box for retaliation.  (ECF No. 25-1 at

1).  Plaintiff does not mention the word "retaliation" in the narrative portion of the administrative

---

[10]The elements for establishing retaliation are the same for Title VII and the ADEA retaliation claims.  *Cullen v. Sec. of U.S. Veterans Affairs*, 507 F. App'x 246, 250 (3d Cir. 2012) (ADEA); *Moore v. City of Phila.*, 461 F.3d 331, 340-41 (3d Cir. 2006) (Title VII).

complaint.  (ECF No. 25-1 at 1, 3).  Plaintiff does not state that he protested against discrimination of any kind or had participated in any way in an investigation or proceeding involving discrimination at or prior to the time of the events at issue.[11]  Under those circumstances, Plaintiff did not exhaust any claim for retaliation and summary judgment with respect to those claims must be granted.  *Gillette v. Donahoe*, Civil Action No. 3:12-CV-1852, 2013 WL 2043149, at \*5 (M.D.Pa. May 14, 2013) (retaliation claim not within scope of EEOC charge of discrimination); *Watson v. SEPTA*, No. Civ. A. 96-1002, 1997 WL 560181, \*7 (E.D.Pa. Aug. 28, 1997) (retaliation claims barred for failure to exhaust administrative remedies plaintiff neither alleged "retaliation" nor alleged that he had complained about discrimination in the EEOC charge), *aff'd*, 207 F.3d 207 (3d Cir. 2000), *cert. denied*, 531 U.S. 1147 (2001).

## V.  Conclusion

Based upon the foregoing reasons, Defendant's motion for summary judgment (ECF No. 22) will be granted.

An appropriate order will be entered.

By the court,

s/ Joy Flowers Conti
Joy Flowers Conti
Chief United States District Judge

Dated:  February 6, 2015

---

[11]Similar to Plaintiff's hostile environment claims, Plaintiff's complaint is devoid of any factual allegations giving rise to a viable retaliation claim.  (ECF No. 1).  In the depositions there is a reference that Plaintiff may have filed an EEOC charge six or seven years ago, but the record is silent about the nature of that filing.  (ECF No. 25-10 at 55; ECF No. 28-2 at 31).  In any event, both Adams and Graswick testified that they were unaware of Plaintiff's previous EEOC claim, and this testimony stands unrebutted.  (*Id.*).